PETER DEBUS, APPELLEE, V. ARMOUR & COMPANY, APPELLANT.

FILED APRIL 24, 1909. No. 15,185.

1. Master and Servant: FELLOW SERVANTS. An employee who is entrusted by his master with power to direct and control the work of other servants, and to whom is committed the duty of seeing that the appliances to be used and with which such other servants are to work are kept in safe condition, is not as to such duties a fellow servant.

2. ———: DUTY OF MASTER: INSTRUCTIONS. Under the circumstances as developed by the issues and evidence in this case, an instruction is not erroneous which informs the jury that it was the duty of the master to furnish a reasonably safe working place for his servants.

3. Appeal: AFFIRMANCE. Where instructions of the court fairly submitted the issues of fact and the law to be applied to the jury, the verdict, if supported by the evidence, will be sustained.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. Affirmed.

T. J. Mahoney and J. A. C. Kennedy, for appellant.

Charles S. Elgutter and Joel W. West, contra.

REESE, C. J.

Peter Debus, while employed by Armour & Company in its meat packing establishment in South Omaha, fell

through an open hatchway and received personal injuries, and brought this action to recover damages therefor. In his petition he alleged that defendant was negligent in failing to furnish him a reasonably safe working place, in this, that the hatchway over which he was required to travel was left open without any guard rail or fence, and without any danger signal or any watchman to warn him of any danger. Defendant admitted plaintiff's employment, his injuries, and that the hatchway was open; denied negligence; alleged that the hatchway was supplied with a plank guard at each side thereof; that the condition of the hatchway and the fact that the trapdoors of the hatchway were open were plainly visible and obvious to plaintiff; that the condition, equipment, operation, and the management of the hatchway and trapdoors had long been well known to plaintiff, and with this knowledge plaintiff voluntarily continued his employment, and thereby assumed all risk of injury; that during the employment of the plaintiff, and for a long time prior to the accident, the trapdoors were opened and closed in the regular process of the work by an employee, designated as a "drop-man," who was plaintiff's fellow servant, and that, if there was any negligence in opening or operating the trapdoors, it was the negligence of such fellow servant, and that plaintiff was guilty of contributory negligence. The reply was a general denial. Plaintiff had judgment, and defendant has appealed.

At the time of and for five months immediately previous to his injuries plaintiff had been working as a pusher in the defendant's packing house plant at South Omaha. An upper floor of one of the defendant's buildings was used for slaughtering sheep and cattle. The carcasses of the animals were stored in two refrigerator rooms or coolers, one of which was on the floor where the killing was done, and the other two floors below. The carcasses were so tagged as to indicate in which cooler they were to be placed, and were hung on trolley hooks or frames

18

which were suspended from an overhead rail fastened to the ceiling. All the carcasses were pushed along this rail to a scale where they were weighed. The scale was 20 feet from the door to the upper cooler. It was the duty of plaintiff and one Svoboda to push all carcasses for the upper cooler from the scale to the door of the cooler, where the carcasses were received and stored in the cooler by two other men called "cooler men." Between this scale and the cooler door was a hatchway six feet square. This hatchway was provided with two trapdoors, which, when closed, formed a part of the floor. The hatchway was five feet from the scale and nine feet from the cooler door. Plaintiff and Svoboda, in pushing the carcasses from the scale to the cooler, were required to walk over the trapdoors. When carcasses were to be placed in the lower cooler, an employee designated as the "drop-man" called to the pushers "downstairs." One of the pushers repeated this call to the cooler men. The pushers and the cooler men then went to the lower floor, and the drop-men opened the trapdoors, pushed the carcasses from the scale over the open hatchway and lowered them to the second floor below. The pushers conveyed the carcasses to the lower cooler, where they were stored away by the cooler men. When carcasses for the upper cooler were reached, the drop-man called through the hatchway to the pushers "upstairs," and one of the pushers repeated the call to the cooler men, and then the pushers and cooler men returned to the upper floor. The drop-man closed the trap doors, and the pushers again resumed their work of pushing the carcasses from the scale across the trapdoors to the upper cooler.

Plaintiff's contention is that, while he was engaged in pushing the carcasses over the hatchway to the upper cooler, the trapdoors were opened without his knowledge, and he fell through the hatchway and received the injuries complained of. On the day of the accident carcasses were being stored in the lower cooler until shortly before noon, when the trap-man, Victor Remish, called to the

pushers "up-stairs." The call was repeated to the cooler men, and all ascended to the killing floor. The plaintiff claims that immediately thereafter a lot of sheep carcasses for the upper cooler was reached, and that he was engaged in pushing these to the cooler, when he fell through the open hatchway, the trap-doors having been opened without his knowledge. It is conceded that the trapdoors were opened by the drop-man, Victor Remish. It is claimed by defendant that the work of placing carcasses in the upper cooler had been completed, and the next carcasses were tagged for the lower cooler, and that the trapdoors were opened in the presence of plaintiff for the purpose of lowering the carcasses to the lower floor, but, as it was nearly noon, further work was suspended until after dinner, and that another employee, who was pushing carcasses from a different part of the room to the scale, and who was temporarily called away from his work, requested plaintiff as an accommodation to take his place and push a few carcasses for him; that plaintiff in pushing the carcasses to the scale for another employee, instead of stopping when the scale was reached, absent-mindedly continued on toward the cooler, and thereby fell through the open hatchway. The evidence shows that to push a carcass from the scale to the cooler door and return required about 20 seconds; that there was a plank guard about one foot high placed on each side of the hatchway when the trapdoors were open; and that in opening the trapdoors the drop-man stood upon one side of the hatchway and opened the doors, they opening from the same side, and then placed the two guard planks on either side of the hatchway. Defendant contends that it was impossible for the drop-man to have opened the trapdoors and to have placed the plank guards while plaintiff was pushing carcasses, without his necessarily seeing and knowing that the trapdoors were being opened. But in this connection it is also shown that the trap-doors were immediately in the walk which plaintiff was required to follow in pushing carcasses.

It was the duty of defendant, as expressed in some cases, to exercise reasonable care in seeing that the appliances with which plaintiff was required to work were in reasonably safe condition. The evidence shows that at the time of the accident plaintiff was pushing six carcasses of sheep into the cooler, which was on the same floor upon which he was operating. It is also shown that with those six carcasses in front of him it was impossible for him to see whether the trapdoors were open or closed until too late to prevent his fall. It is conceded that the guard planks referred to could furnish him no protection, and were not placed there for that purpose, their object being to prevent employees from slipping into the opening on account of the slippery condition of the floor surrounding same. Indeed, the presence of those planks constituted an element of danger to one who might stumble over them while pushing carcasses, thus throwing him head downward into the opening. The open hatchway was a most dangerous place to one pushing carcasses to the cooler on that floor, owing to his inability to see in front while engaged in the work. During the time plaintiff was in the service of defendant the trapdoors had been carefully closed by another employee when carcasses were to be pushed to the cooler on that floor, and all the carcasses of sheep were required to be placed in that cooler, none of them being sent below. Plaintiff had been called "upstairs" by the person whose duty it was to give the order when he found the sheep carcasses ready to "push." It was no part of his duty to attend the trapdoors. He had the right to assume that the person upon whom that duty devolved would see to it that the doors were closed. This was the duty of Remish, but who was not in that regard a fellow servant. It must be apparent that plaintiff was guilty of no negligence which contributed to the accident.

It is contended by plaintiff, and not without reason, that the appliances were negligently constructed and created an element of danger when not properly safeguarded by

the one whose duty it was to see that the doors were closed. All carcasses were carried suspended upon a car or contrivance which was itself suspended to a single rail or track, upon which it was moved by means of a wheel or traveler running upon the track, moving to and fro. This track passed immediately over the trapdoors. When carcasses were to go below, the hatchway was found to be open, and, when the carrier to which the carcasses were suspended came over the center of the opening, the rail was automatically broken, and the detached segment went below carrying its load. If the load were composed of the carcasses of sheep, that fact was notice that the load passed over the hatchway and that the doors would be closed. Had another rail and carrier been provided for the upper cooler, not passing over the hatchway, all danger of accidents of this kind could have been avoided. As described by the pleadings and evidence, including drawings and diagrams of the place in question, we cannot look upon the appliances there as otherwise than dangerous, in the absence of the best of care. Did plaintiff's knowledge of these facts in any way exonerate defendant? We think not. As we have seen, it was no part of his duty to open or close the trapdoors or to give them any attention. The conditions there and duties of others were a notification to him that the doors would be closed when the "upstairs" carcasses were to be pushed, and that, as he could not see in front of his feet, he might rely upon the doors being in place, and that he could safely proceed. This was and had been the uniform rule.

But it is claimed that Remish, whose duty it was to give directions and see that the trapdoors were closed, was a fellow servant with plaintiff, and that defendant is not answerable to plaintiff for his negligence, if any existed. To this we cannot agree. It was shown upon the trial that Edward Mix was the recognized foreman over the employees, and that Remish was, under Mix, the foreman over plaintiff and his coemployee, Svoboda, and that plaintiff and Svoboda properly looked to Remish for

orders and directions in the prosecution of their work. Remish directed their movements. His orders were to be obeyed by them. He had charge of the trapdoors. It was his duty to see that they were ready for the course the carcasses were to take, whether into the cooler on the same floor or downward to the cooler below. He was the superior of plaintiff in that line of duty, and therefore his negligence, if any, cannot excuse defendant on the ground that he was a fellow servant.

It is urged that the district court erred in its instructions to the jury. Instructions were given by the court upon its own motion and upon the motion for both plaintiff and defendant. They are quite voluminous, and cannot be set out here without extending this opinion to an unreasonable length, and no good purpose would be accomplished thereby. It must be sufficient to say that we have carefully read all, and find that those given were in harmony with the views herein expressed. All material questions of fact were properly submitted and the law correctly stated. Under these instructions, the jury passed upon the questions submitted, and with their finding we must be content.

The judgment of the district court is

AFFIRMED.